## Iron City National Bank of Pittsburg, a Corporation, Appellant, *v.* Herbert Du Puy and David Shaw, Partners, trading as Anderson, Du Puy & Co.

*Promissory notes—Fraudulent collateral—Silence—Duty to speak.*

Where the payee of a note refuses to renew it because he has learned that the collateral accompanying it is fraudulent, and the maker of the note then arranges to borrow the money from a bank upon the same collateral, and the payee, at the maker's request, sends the note and collateral to the bank by his clerk, who is merely asked by the cashier of the bank the amount due, and is handed a check upon the delivery of the collateral, the transaction does not amount to a sale of the note and collateral by the payee to the bank, and the payee cannot be charged with inducing the bank to make the loan.

Argued Nov. 1, 1899.   Appeal, No. 170, Oct. T., 1899, by
plaintiff, from order of C. P. No. 2, Allegheny Co., Jan. T.,
1898, No. 197, refusing to take off nonsuit.   Before GREEN,
McCOLLUM, MITCHELL, DEAN, FELL and BROWN, JJ.   Af-
firmed.

Assumpsit to recover money alleged to have been pro-
cured through the fraud and artifice of defendants.   Before
WHITE, P. J.

The court entered a compulsory nonsuit, stating its reasons
therefor as follows :

It seems from the evidence that a man by the name of Tyler
had borrowed from the defendants money, in the neighborhood
of $3,000, for which he pledged, as collateral security, two cer-
tificates of stock in the Diebold Safe & Lock Company, a cor-
poration in Ohio, twenty-five shares in each certificate, making
fifty shares, purporting to be of the capital stock of the com-
pany.   Tyler had renewed his note several times with the de-
fendants.   Finally the defendants refused to renew the note,
and demanded its payment, and I believe the note was pro-
tested.   Tyler then went to the plaintiff bank to secure a loan
for the purpose of paying the defendants, and offered to the
bank the certificates of stock as collateral.   The bank, at the
time Tyler made the application for a loan, knew that these
stocks were in the hands of the defendants, pledged there for
what Tyler owed the defendants.   Some negotiations were
had before March 6, 1897.   On March 6, 1897, Tyler was at
the bank, and had made arrangements for the bank to dis-
count his note for $3,100, on these stocks being pledged as
collateral.   He went down to the defendants, and the book-
keeper of the defendants, Allison, came up with him to the
plaintiff bank with the two certificates of stock.   The bank
then ascertained how much was due to the defendants, a cal-
culation was made, and it was ascertained to be $2,983.42.   All
Mr. Allison, the bookkeeper, said when he went up there was,
these are the stocks, and he would not give them up until he
got a check for the amount due to the defendants. . . . The
loan was made, according to the evidence, directly to Tyler,
and on Tyler's own note given to the bank, and these stocks

were simply pledged as collateral, and the balance of the proceeds of the $3,100 note, after the payment to the defendants, was paid over by the bank to Tyler. On that evidence the loan was directly to Tyler, no loan whatever to the defendants, and, according to the evidence, the defendants had nothing whatever to do in securing the loan to Tyler.

There is another averment in the statement, based very largely upon the previous averments in the statement, that the defendants knew that these stocks were forged stocks, and worth nothing; and it appears from the evidence that the defendants had heard that the corporation repudiated these stocks. They had heard that the corporation charged that certain stocks outstanding were forged certificates of stock, but the evidence shows that the defendants believed they had a claim against the corporation for the value of these stocks, and so notified the cashier of the plaintiff bank after the maturity of this paper, and after the bank called upon the defendants to pay, which they refused to do. The evidence does not show any fraud on the part of the defendants. All they did was simply to receive the amount of money due them for which they held these collaterals. . . .

The court refused to take off nonsuit.

*Error assigned* was refusal to take off nonsuit.

*John S. Wendt,* with him *D. T. Watson* and *Johns McCleave,* for appellant.—The defendants were guilty of an active misrepresentation to the bank.

The nondisclosure of a material fact of which the other party is known to be ignorant may, under the circumstances of the case, be equivalent to an active concealment, for the nondisclosure may have the effect of impliedly representing that the fact does not exist, or of rendering the facts disclosed absolutely false: Peek v. Gurney, L. R. 6 Eng. & Ir. App. 377; Lee v. Jones, 17 C. B. N. S. 507; Phillips v. Foxall, L. R. 7 Q. B. 679; Bigelow on Fraud, 16, 611; Keen v. James, 39 N. J. Eq. 527; Barwick v. English Joint Stock Bank, L. R. 2 Ex. 259; McKenzie v. British Linen Co., L. R. 6 App. Cas. 82; Brown v. Montgomery, 20 N. Y. 287; Martin v. Morgan, 1 Brod. & B. 289.

If the defendants delivered the certificates knowing them to be forged, they were, perhaps, guilty of forgery : Marsh v. Keating, 1 Bing. N. Cas. 198 ; Stone v. Marsh, 6 B. & C. 551 ; Barwick v. English Joint Stock Bank, L. R. 2 Ex. 259.

Privity of contract is not necessary to maintain an action of assumpsit for money had and received : Hall v. Marston, 17 Mass. 574 ; Perry v. Swasey, 12 Cush. 36 ; Soderberg v. King County, 33 L. R. A. 670 ; Bank of the Metropolis v. First Nat. Bank of Jersey City, 19 Fed. Rep. 303 ; Abbotts v. Barry, 6 Eng. C. L. Rep. 186 ; Hill v. Perrott, 3 Taunt. 274 ; Ritchie v. Summers, 3 Yeates, 531 ; Pittsburg & Baltimore Coal, Coke & Iron Co. v. Allegheny Nat. Bank, 34 Legal Int. 313 ; Dido v. Strobel, 3 Pa. Superior Ct. 522 ; Hindmarch v. Hoffman, 127 Pa. 284 ; Babcock v. Case, 61 Pa. 427 ; Mussi v. Lorain, 2 Browne, 56.

Under the circumstances of this case the transaction at the bank was, in effect, a sale or transfer by the defendants to the bank of the debt or claim of the defendants against Tyler secured by the pledge of the so-called certificates of stock : Charnley v. Dulles, 8 W. & S. 353 ; Porter v. Bright, 82 Pa. 441 ; Benjamin on Sales, sec. 607 ; Meyer v. Richards, 163 U. S. 385 ; Gurney v. Womersley, 4 El. & Bl. 133 ; Swanzey v. Parker, 50 Pa. 441 ; Otis v. Cullum, Receiver, 92 U. S. 447 ; Allen v. Clark, 49 Vt. 390 ; Cabot Bank v. Morton, 4 Gray, 156 ; Merriam v. Wolcott, 3 Allen, 258 ; Bell v. Dagg, 60 N. Y. 528 ; Frazer v. D'Invilliers, 2 Pa. 200 ; Flynn v. Allen, 57 Pa. 482 ; Stroh v. Hess, 1 W. & S. 153 ; Porter v. Bright, 82 Pa. 441.

The vendor of a share of stock impliedly warrants that the same is issued by the duly constituted officers of the company, and is sealed with the genuine seal of the corporation, and if the certificate is forged, the vendor is liable to his vendee on the implied warranty of title : People's Bank v. Kurtz, 99 Pa. 344 ; Boston & Albany R. R. Co. v. Richardson, 135 Mass. 473 ; Kauffelt v. Leber, 9 W. & S. 93 ; Flynn v. Allen, 57 Pa. 482 ; Hossler v. Hartman, 82 Pa. 53.

One who takes a note or certificate of stock as collateral security for a debt is a bona fide holder for value : Kisterbock's App., 127 Pa. 610 ; Randall v. Rhode Island Lumber Co., 40 Atl. Rep. 763 ; Gilbert v. Building Assn., 184 Pa. 554 ; Flynn v. Allen, 57 Pa. 482.

As the certificates were worthless the tender of them back to the defendants was unnecessary: Babock v. Case, 61 Pa. 427; Beetem v. Burkholder, 69 Pa. 249; Morrow v. Rees, 69 Pa. 368; Burns v. McCabe, 72 Pa. 309; Wilkinson v. Ferree, 24 Pa. 192.

*James B. Sterrett,* for appellees, cited Mathers v. Pearson, 13 S. & R. 258.

Opinion by Mr. Justice Fell, December 30, 1899:

The testimony presented at the trial on which the nonsuit was entered furnishes no basis for the argument that the defendants by misrepresentations induced the plaintiff to loan money for their benefit, or that the transaction was in effect a sale by the defendants to the bank of their claim against a third party secured by the pledge of fraudulent certificates of stock.

The defendants loaned money to one Tyler on his note to his own order, with fifty shares of stock of the Diebold Safe and Lock Company as collateral. Before the loan matured they learned that the issue of stock was unauthorized, and they refused to renew. Tyler then applied to the bank for a loan of $3,100, and offered this stock, which he told the cashier was held by the defendants as collateral. Having arranged with the bank, he applied to the defendants for the stock, and they sent a clerk with it to the bank. The clerk was asked either what he wanted for the certificates or what amount was due the defendants, and upon his stating the amount of the note with interest and costs of protest he was handed a check for $2,983.42, and he delivered the certificates to the cashier and the note to Tyler. The balance of the loan of $3,100 was paid by the cashier to Tyler. This was the whole transaction. The defendants had no communication, directly or indirectly, with the bank except through their clerk, and that was limited to the mere statement by him of the amount due. The sending of a clerk with the note and certificates was in accordance with the usual business custom in such matters. There was neither misrepresentation, express or implied, nor active concealment of any fact, and there was no relation of trust or confidence to give rise to a duty. There is no foundation what-

ever for the contention that the transaction was a sale by the defendants of their claim on the note and collateral.  It was not, either in form or in substance, a sale, and none of the parties so regarded it at the time.  It was merely the borrowing of one party to pay an overdue note held by another, and nothing more can be made of it.

The defendants were not then liable unless they were under a duty to speak to one who had made no inquiry of them, who had reposed no confidence in them, who was not influenced or misled by their conduct, and with whom they had nothing whatever to do.  Rigid and exacting as is the law in holding silence to be a fraud when there is a duty to speak, it recognizes no such obligation as this.

The judgment is affirmed.